## Bronston's Admr, et al. v. Bronston's Heirs.

(Decided January 19, 1911.)

### Appeal from Madison Circuit Court.

1. Deeds—Attorney and Client—Competency of Attorney to Testify as to the Information Obtained From Deceased Client.—In this action to recover a strip of land conveyed by appellant's decedent, upon the trial it was competent for the attorney who wrote the deed to testify as to what he knew from other sources; what he had before him in drawing the deed, and the fact that he did not know of and take into consideration a division of the land to which the decedent was a party.

2. Same—Not Voluntary or Deed of Gift.—The deed showing a meritorious consideration, and not being attacked, is evidence that it was not voluntary, or a deed of gift.

J. A. SULLIVAN and S. M. WALLACE for appellants.

SMITH & SMITH for appellees.

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

T. C. Bronston owned a farm of about 380 acres in Madison county, which he conveyed by deed to appellees, Mrs. House and Mrs. Osborn, April 18, 1906. He had acquired the farm, most of it in 1859. About 24 acres he acquired in 1900. When he made the deed to appellees it is said he was about 80 years old. The land was rated it seems at about $100 an acre. T. C. Bronson's farm adjoined a farm of Mr. Turley. The division line was crooked, marring the shape and appearance of the two tracts and entailing more expense on each owner for fencing. They agreed to straighten the line, by which a part of Bronston's farm would go to Turley and a part of Turley's to Bronston. They executed deeds in 1888. In the exchange Bronston got a long, narrow, triangular strip of land containing four and a quarter acres. He let Turley have a strip of 3 1-2 acres. The part of the farm where this line was changed was that which Bronston had acquired in 1859. The deed made to appellees followed the calls of Bronston's original deed, taking no notice of the exchange with Turley. The strip got from Turley lays on the back side of the Bronson farm,

about a half mile from a public road, and would have to be reached by opening a passway through the Bronston farm. The strip was thrown into a field of the Bronston farm and used as a part of it from 1888. Bronston died intestate. This controversy is between his heirs at law and appellees, the grantees in the deed of 1906. The former are seeking to recover the four and a quarter acres, together with a passway to the turnpike road, reserved impliedly it is claimed by T. C. Bronston as a passway of necessity. Appellees claim that the four and a quarter acres were given to them as a part of the farm, and were intended to be included in the conveyance, but by mistake of the draftsman the deed was written erroneously so as not to include this strip by express terms. The proof satisfies us that T. C. Bronston intended to convey and attempted by the deed of 1906 to convey to appellees, the whole of the farm, but that owing to the mistake of the grantor and of the draftsman in preparing the deed that part of the description was omitted which would have embraced the strip of land in dispute. The answer of appellees is in the nature of a counterclaim to have that deed reformed.

The circuit court found the facts to be as stated above, and adjudged in favor of appellees. It is from that judgment this appeal is prosecuted.

The first question raised is as to the competency of the testimony of Mr. Smith, the attorney who wrote the deed for T. C. Bronston. Mr. Smith testified to certain information he got from Mr. Bronston at the time he was retained to write the deed, and it is contended that under section 606, subsection 4, Civil Code, he was incompetent as a witness to testify against his client's estate and heirs, without their consent as to such information. The exceptions went to the deposition as a whole. Some parts of it were clearly admissible, aside from the feature complained of. For example, what he knew from other sources, what he had before him in drawing the deed, and the fact that he did not know of and did not take into consideration the Bronston-Turley division in 1888. The exceptions being to the deposition as a whole were properly overruled. (L. & N. R. R. Co. v. Graves, 78 Ky. 74.) But, laying that aside, and disregarding the testimony complained of, we think there was enough evidence to show that the grantor intended to convey, and undertook to convey to appellees the entire farm of which the four and a quarter acres was a part, and that it was an oversight of the grantor in making a misdescription

of the boundary that failed to make the boundary in the deed conform to his title papers for the land. The evidence leaves no doubt with us that the omission was a mistake in the execution of the paper. The main question is thus presented, what is the effect of the mistake? Can it be remedied now by a court of chancery? Appellant's argument is based upon the theory that the deed was voluntary, and without valuable consideration. Without deciding whether such a deed could be reformed at the instance of the grantees and without the consent of the grantor, we find that the deed in question is not of the class it is assumed by appellant to be.

The deed thus recites its consideration:

"For and in consideration of the sum of one dollar to me in hand paid and for the love and affection I have for Emma House, wife of A. J. House, and Tommie Bronston Lake, wife of Oscar L. Osborne, and for the further consideration of services performed for me by them, and for the further consideration with which they have treated me, and for other good and valuable considerations, I, Thomas O. Bronston, of," &c.

The deed showing a meritorious consideration, and not being attacked, is evidence that it was not voluntary, or a deed of gift. Although the deed recites that it was executed upon the consideration in part of love and affection, the addition of valuable considerations recited places it in the catagory of instruments evidencing bargaining contracts. Of the applicability of the principle to cases admitting of reformation of contracts, Pomeroy's Eq. Jurisprudence (Section 870), thus states the rule:

"Whether the contract is executed or executory, the plaintiff may introduce parol evidence to show mistake or fraud whereby the written contract fails to express the actual agreement, and to prove the modifications necessary to be made, whether such variations consists in limiting the scope of the contract or in enlarging and extending it so as to embrace land or other subject matter which had been omitted through the fraud or mistake, and that he may obtain a specific performance of the contract thus varied; and such relief may be granted although the agreement is one which by the statute of frauds is required to be in writing."

The effect of the reformation is neither to make a new contract for the parties, nor to alter or add to the one they had made. It is to correct the evidence of the

contract so as to conform it to the truth. It is to make the memorial of the fact conform to both what was intended and agreed upon. Every written agreement must have been preceded by some kind of oral negotiations or purpose. When the minds meet, because so required to be done by the law to be effectual, or for convenient evidence, of it, it is reduced to writing which is said to be the contract. But if, perchance, by mistake of the parties a part of that which was' agreed to is omitted from the writing, it is not in truth the contract. To enforce it as such would be to disappoint the parties and to miscarry them into a conclusion which neither contemplated, and perhaps which neither would have wittingly entered into. It may be therefore reformed, although one of the parties subsequently refuses consent or is dead, so as to express the actual agreement. (Worley v. Tuggle, 4 Bush, 168; Mattingly v. Speak, 4 Bush, 310.)

That a deed executed in consideration partly of love and affection and partly on a binding promise by the grantee to pay off the existing indebtedness of the grantor is such a conveyance that may be reformed because of fraud or mistake, see Smith v. Barksdale, 110 Ga., 278, 34 S. E. 582; and that services performed by the grantee for the grantor is such consideration as takes the deed out of the class of voluntary conveyances, and may be reformed for mistake, see Baker v. Pyatt, 108 Ind. 61, 9 N. E. 112.

Although the answer of appellees is not styled a counterclaim, the effect of its allegations and prayer makes it such. The court might have adjudged a reformation of the deed upon the pleadings and proof. However, the judgment merely dismissed appellant's petition, thereby quieting appellee's title. The effect is not different. The judgment settles the matter.

It is affirmed.